STATE *v.* APPLEBAUM.

Cincinnati Municipal Court.

No. 106114.   Decided January 9, 1963.

Mr. *Ralph E. Cors,* assistant prosecutor, for city of Cincinnati.

Mr. *Allen Brown* and Mr. *Baron Gold* of *Messrs. Kondritzer, Gold & Frank,* for defendant.

DENNING, J. This cause is before the Court upon the filing of an Affidavit by the State of Ohio against the defendant, as "co-owner and one of the persons in charge of the 'Howdy Car Wash,' 4444 Reading Road, Cincinnati, Ohio," alleging that he "did unlawfully and knowingly open a building or place for the transaction of business, to-wit: 'Howdy Car Wash,' 4444 Reading Road, on the first day of the week, commonly called Sunday, . . . in violation of Section 3773.24, Revised Code, and against the peace and dignity of the State of Ohio."

The cause was tried before the Court and the evidence adduced showed that the defendant was at the time the police officer arrived washing cars for various customers but that he sold nothing by way of commodities incidental to keeping a car clean and that this service was being provided on a Sunday.

At the conclusion of the case, the defendant filed with the Court a Motion to Dismiss the charge or grant a verdict in favor of the defendant.

The defendant based his motion on the propositions:

1) That the operation of a place of business for the washing of automobiles is a work of necessity, under the general prohibitive clause of Section 3773.24, Revised Code, and

2) That the furnishing of a service in the washing of automobiles is incidental to traveling under the specific exemption of paragraph A of said Code Section. It will be noted that there is no contention in the Motion of the unconstitutionality of the Act, so we are concerned only with the above two contentions of the defendant.

We will discuss first whether or not the defendant's operation is one of necessity. It is conceded that the word "necessity" is a broad term and should be construed to carry out the intent of the Legislature as far as possible. Since this is a land-mark case, the Court having found no authority bearing directly upon this type of service, we must depend upon reasoning and logic to arrive at a proper conclusion.

As stated in *Euclid (City)* v. *MacGillis*, 19 Ohio Opinions (2d), 480, the exception runs only in behalf of a person, firm, or corporation engaged in common labor or the operation of or transaction of business.

If the operation of his business was not a necessity he would be guilty of violating the section referred to above. However, his judgment as to his operation being necessary or not should be and must be based upon certain factors concerning the public peace, health or safety. To guide him in this decision he may consider the Traffic Code of Cincinnati with its various provisions tending to make it unlawful for the operator of a motor vehicle to drive with an obstructed view to the front or sides and to have a clear view to the rear.

We quote certain sections of the Traffic Code which make it unlawful for the public to drive an automobile without complying with these sections:

"No. 503-41: Rear Vision Mirror: Operators of vehicles . . shall have a clear and unobstructed view to the front and to both sides of their vehicles . . and shall have a clear view to the rear of their vehicles . . by mirror."

"No. 503-51: License Plates: It shall be unlawful for any person to operate any vehicle . . unless the license plates . . be so displayed thereon . . and not covered, obscured, or concealed by any part or accessory of such vehicle or by any other substance."

"No. 603-55: Blurred Windshield: It shall be unlawful to operate or to have upon any highway, any vehicle in which the operator's view through the windshield or any window is obstructed, due to the glass being dirty, cracked, blurred, or otherwise non-transparent."

It is common knowledge and we know of no case where an operator of a filling station has ever been arrested or cited for doing business on Sunday because, with the influx of the automobile in virtually every family and the necessity for speedy transportation, filling stations are conceded to come within the exception. And a filling station, upon the purchase of gasoline or oil or both, or the supplying of air for the tires, furnishes the service of cleaning the windshield, the rear window, the headlights and, ofttimes, the side windows. This is a service fur-

nished as a part of the consideration for the purchase of gasoline.

Can it be said then that a person who has no gasoline pump in front of his place of business but furnishes a service of cleaning all the glass components of an automobile plus the top and sides composed of metal is violating the law merely because of a charge for said services?

How far does the person using a sponge to clean an automobile have to propel said sponge before it can be said he is violating the law. And, conversely, just where shall he stop in the cleaning of said automobile to be within the purview of the law? How many drops of water can be dispensed on an automobile to be in violation of the law? Where does one have to stop?

If the law says that it is a "necessity" to keep all the glass in your automobile clear so that you can drive in safety is it a violation of the law to say that the top cannot be cleaned at the same time?

And who is to say what is a necessity to the owner of a high priced automobile? The operator of the business is confronted with the decision, if a customer brings in a high-priced automobile in which he has a distinct pride and a tremendous financial investment, and he tells the operator that his car will become rusted and depreciate in value if the road-dirt, salt, etc. is to remain on the car. In addition to this, he has an aesthetic pride in the ownership of his investment. Is it reasonable, then, to permit the operator of the business to clean only the windshield and side windows, etc. but no other part of his car?

It is true that many such cases happen and while the courts have held that it must be the general public who must benefit we ask the question—How many of the general public must be served to bring it within the purview of the exceptions under this Section?

Is it not the same logic used in the *Euclid* v. *MacGillis case*, in which the Court held that it is perfectly legal for the operator of a stadium in which a football game is played on Sunday to provide a customer with food and drink, simply because he is in an enclosure and paid a fee to enter, whereas a person who sells

food and drink to a family who are destined for a picnic in the outdoors, in order to enjoy a Sunday holiday, may not accommodate his customer?

The next contention of the defendant is that contained in Sec. "A" which says: "Traveling or the providing of services and commodities *incidental* thereto;"

The word "traveling" as commonly used means going from a certain place to a destination. It is not all-embracing of the term "riding."

The former Section, before the Amendment of 1959, gives a clue to the legislative intent in that they specifically exempted modes of transportation that have elements of destination, to-wit: "emigrating families . . watermen from landing their passengers, or keepers of toll bridges, toll-gates, or ferries from attending them on Sunday."

All these exceptions infer the meaning of destination.

If we were to confine our reasoning solely to the question of whether or not a person provides service for travelers or merely Sunday drivers it would be incumbent upon the filling station operator, before he furnishes gasoline or oil, to ask the motorist, "Where are you going?" And, if he determines that he is merely a Sunday driver he could not furnish such commodities. The Court can imagine the many responses of the motorist if a filling station attendant should ask him where he is going. The response from many motorists would be not where the driver is going but where the attendant might go.

What is "incidental to traveling"?

The word incidental, like the word necessity, is not specifically defined in legal nomenclature. But Webster's New International Dictionary defines it as follows:

"happening as a chance or undesigned feature of something else." or

"dependent on or appertaining to another thing; directly and immediately pertinent to, or involved in, something else."

The primary subject then to which the incident must be related is the word "traveling." If it is permitted to provide a commodity incidental to traveling, to-wit: the things that are certainly considered essential by a motorist: such as gasoline, oil, air in the tires: and nothing else could be furnished,

then the motorist could very well have the means of traveling but, with a dirty windshield, would not be able to see where he is going. Therefore, the service furnished in permitting the driver to see where he is going, to-wit, a clear windshield and windows at the side and rear, are *a service incidental to travel.*

We come to the conclusion, therefore, that under the above exceptions based on the word "necessity" and also upon the word "incidental" that the defendant is not guilty and the Motion to Dismiss should be granted.

It was stipulated and agreed by counsel and the prosecuting attorney that two other cases involving the same charge and testimony, and in which similar Motions to Dismiss were presented, would be determined by the Court's decision in the *Applebaum case.* These cases are:

No. 106115, *State* v. *Pockros*, and No. 106116, *State* v. *Allen.* Said cases are also dismissed.